SWEENEY, Appellant, *v*. FRANCIS, Respondent

No. 8462

Submitted January 31, 1945. Decided February 19, 1945.

156 Pac. (2d) 546

Messrs. M. J. Doepker of Butte and Joseph P. Hennessey of Billings for the Appellant.

Messrs. Poore and Poore of Butte for the Respondent.

MR. CHIEF JUSTICE JOHNSON delivered the opinion of the court.

By this action against his sister, the plaintiff sought a decree adjudging him entitled to an undivided one-half interest in sixty shares of $6 preferred stock of the Montana Power Company with right of survivorship, together with one-half of the $1,080 paid thereon as dividends since August 1, 1938; and adjudging him entitled also to one-half of the sum of $6,150 on deposit in two Butte banks in the joint names of defendant and the parties' mother with right of survivorship. The trial court rendered findings of fact, conclusions of law and decree in defendant's favor, and the sole question on appeal is whether they are sustained by the evidence.

Plaintiff's contentions in effect were that both the money and the stock represented the profits and the proceeds of sale of an undivided one-half interest in the Post Office News Stand, a partnership; that the interest stood in defendant's name, but was held by her in trust for plaintiff, defendant and their mother; that before the latter's death it was agreed that the money remaining after the payment of her debts and funeral expenses was to be divided between plaintiff and defendant; that prior to the mother's death the three had acquired the Montana Power stock, and that it stood in the joint names of the mother and the defendant as joint owners with right of survivorship; that in February, 1937, the mother deeded certain real property to plaintiff; that it was then mutually agreed between the three that upon the mother's death the defendant should surrender the stock certificates and procure a new one in the joint names of plaintiff and defendant with right of survivorship, which was accordingly done in June, 1938, immediately after the mother's death; that in October, 1938, plaintiff was threatened with a lawsuit and that the defendant

persuaded plaintiff to endorse the stock certificate to her with the understanding that she should hold it in trust for herself and plaintiff, and should have the stock reissued as before if the suit were terminated without affecting plaintiff's interest; that the suit was so terminated, but that upon plaintiff's demand defendant refused to have the stock reissued and claimed to be its absolute owner.

Defendant, on the other hand, contended that she herself had owned the undivided partnership interests in her own right; that she had paid the entire consideration therefor, and that neither plaintiff nor her mother had any interest therein; that upon its sale she had placed part of the money in the joint names of herself and her mother for the latter's benefit in case of defendant's prior death; that defendant had purchased the Montana Power stock with her own money and had it issued in the joint names of herself and her mother with right of survivorship; that shortly after her mother's death she caused the stock to be placed in the joint names of herself and plaintiff with right of survivorship upon plaintiff's promise that he would entirely cease the use of intoxicating liquor; that upon plaintiff's failure to keep his promise defendant demanded that he endorse the certificate to her, and that he did so; that she never delivered the certificate to plaintiff; that it never was in his possession except for endorsement; that he had no right, title or interest therein, and never contributed any part of the purchase price, nor paid any consideration for it.

The defendant went to work at the Post Office News Stand in 1911 at the age of fifteen. In 1924 she acquired a one-fifth interest which later was gradually increased to a one-half interest before its sale for $22,400 in 1935. The original purchase was made by defendant for $7,600 which, according to her testimony, she paid as follows: $2,000 in cash from her savings account in the First National Bank of Butte, $1,600 raised by her mother on a real estate mortgage, which defendant repaid, and a note for $4,000 paid by defendant in install-

ments. Certainly there is substantial evidence to the effect that the entire one-half interest in the partnership and the sixty shares of corporate stock were acquired by defendant for herself, and paid for out of her wages and profits from the business and from the proceeds of a five per cent interest in the partnership bequeathed to her by a relative; that defendant was always known to the other partners as the sole owner of the interest standing in her name; and that not until after the mother's death did plaintiff claim an interest in the partnership. Plaintiff seems not to have worked very steadily during the last fifteen years, but claims to have contributed $3,900 to the original purchase by monthly payments during some three years while working at a store and living at home, and to have asserted an interest from the start. However, he did not claim to have received any income from the business except $500 in 1928; defendant denied that plaintiff ever claimed or received any income from the business but testified that during plaintiff's stay of four or five months at San Francisco in 1928 she sent him $75 to $100 per month upon his complaints that he could not find work and that his personal effects had been stolen. Thus there was conflicting evidence, but the trial judge obviously was not impressed by plaintiff's testimony concerning the partnership interest. The same is true as to plaintiff's testimony with reference to the alleged agreement between the three prior to the mother's death relative to the money and the corporate stock, and with reference to the assignment of the corporate stock by defendant to plaintiff and by plaintiff back to defendant in 1938. Defendant's version of the latter assignment was confirmed by her husband and also by an entirely disinterested witness.

Since the trial court's findings of fact, conclusions of law and decree were made upon conflicting evidence, and the evidence supporting them was substantial and not inherently unbelievable nor otherwise undeserving of credibility, we must, under the well-settled rule, affirm the judgment. Accordingly it is so ordered.

Associate Justices Morris, Adair, Angstman and Cheadle concur.

Rehearing denied March 17, 1945.